IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISIONS

| | | |
|---|---|---|
| ARTURO S., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:18-CV-2475-K-BK |
| | § | |
| ANDREW M. SAUL, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, the parties' cross-motions for summary judgment are before the undersigned United States Magistrate Judge for findings and a recommended disposition. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 18, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 19, should be **DENIED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings.

I.     BACKGROUND

    A.  Procedural History

Plaintiff seeks judicial review of a final decision of the Commissioner denying his claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). Plaintiff applied for benefits in November 2015, alleging that he had been disabled since May 2015 due to problems with his neck, leg, and back, as well as multiple fractured ribs. Doc. 13-1 at 126-27; Doc. 13-1 at 206. Plaintiff's claim was denied at all administrative levels, and he now appeals to

this Court pursuant to 42 U.S.C. § 405(g).  Doc. 13-1 at 4-6; Doc. 13-1 at 11-21; Doc. 13-1 at 26-49; Doc. 13-1 at 68-72, 80-84.

### B. Factual Background

Plaintiff was 60 years old on his alleged onset date.  Doc. 13-1 at 53, 68.  He can speak only a little English and attended school only up to the third grade in Mexico.  Doc. 13-1 at 32.  Plaintiff performed past work as a forklift operator and a mold repairer, both of which are classified as medium exertion, semiskilled work.  Doc. 13-1 at 35-37, 44-45; Doc. 13-1 at 198-199, 207.

In terms of his medical history, a CT scan taken in October 2015 indicated that after falling from a ladder, Plaintiff suffered four rib fractures and a small pneumothorax (lung collapse) resulting in chest pain and shallow breathing.  Doc. 13-1 at 256, 261; Doc. 13-1 at 272.  Plaintiff also was intermittently treated for hypertension and diabetes, as well as chronic right shoulder pain with associated hand weakness and numbness.  Doc. 13-1 at 264; Doc. 13-1 at 285, 295; Doc. 13-1 at 309-10; Doc. 13-1 at 328, 344.

Most significantly, Plaintiff sought treatment for chronic back pain and sciatica.  Doc. 13-1 at 285; Doc. 13-1 at 309-10.  An October 2016 x-ray of Plaintiff's lumbar spine revealed near-complete disc height loss with endplate sclerosis and multilevel osteophyte formation throughout, as well as moderate facet arthrosis at L4 through S1 and mild degenerative joint disease of the S1 joints.  Doc. 13-1 at 320.  An x-ray of Plaintiff's cervical spine taken the same day revealed moderate to severe disc space narrowing at C4 through C7, posterior osteophytes and degenerative changes in the facet joints also at C4 through C7.  Doc. 13-1 at 323.  The diagnosis was advanced degenerative disc disease at C4 through C7 and reverse cervical lordosis.  Doc. 13-1 at 323.  Plaintiff reported that his prescription pain medication helped and

that he was not interested in injections or surgery at that time; however, he did attend physical therapy briefly in October and/or November 2016. Doc. 13-1 at 331-36.

### C. The ALJ's Findings

In January 2018, the ALJ found that Plaintiff had the severe impairments of status-post rib fracture, degenerative joint disease, obesity, diabetes mellitus, and hypertension. Doc. 13-1 at 16. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work and could thus perform his past work.[1]  Doc. 13-1 at 21.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

---

[1] Medium work is defined as the ability to lift and carry 50 pounds occasionally and 25 pounds frequently and stand and walk for six hours in an eight-hour work day. 20 C.F.R. § 404.1567(c); SSR 83-10, 1983 WL 31251 (1983).

3

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d

4

156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III.   ANALYSIS

Plaintiff argues that the ALJ erred in assessing his RFC and the effects of his impairments on his ability to work without the benefit of any medical opinion on that subject. Doc. 18-1 at 4-7.  Defendant responds that the ALJ merely properly interpreted the medical evidence in determining Plaintiff's capacity to work and substantial evidence in the medical records supports the RFC assessment.  Doc. 19-1 at 3-6.

The RFC is an assessment, based on all relevant evidence, of a claimant's ability to work, despite his impairments.  20 C.F.R. § 404.1545(a).  Stated differently, it is the most a claimant can do, notwithstanding his physical and mental limitations.  *Id.*  The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence.  *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).  In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the ALJ ruled that a claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion.  *Ripley*, 67 F.3d at 557.  The appellate court noted that the claimant's medical records contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish what effect that condition had on his ability to work.  *Id.*  Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.  *Id*. at 557-58.  The *Ripley* panel explained, however, that "[t]he absence of such a statement . . . does not, in itself, make the record incomplete."  *Id.* at 557.  Rather, reversal is only appropriate if the claimant can show prejudice, i.e., "that he could and would

5

have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

While the RFC determination falls solely to the ALJ, judges of this court have consistently found that an ALJ contravenes *Ripley* under the circumstances presented here. *See Raper v. Colvin*, 262 F.Supp.3d 415, 422 (N.D. Tex. 2017) (Godbey, J.) (collecting cases holding that an ALJ is not permitted to reject all relevant medical opinions and then independently assess a claimant's RFC without medical evidence addressing the effects of the claimant's impairments on the claimant's ability to work); *see also Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 803 (E.D. Tex. 2006) ("*Ripley* clarifies that an [ALJ] cannot determine from raw medical data effects of impairments on claimants' ability to work.").

This Court "is not able to agree that the evidence substantially supports the ALJ's conclusion that [Plaintiff] was not disabled, because there is no medical opinion supporting the ALJ's finding that [Plaintiff] has the RFC" to perform work at the physical level the ALJ defined. *Fitzpatrick v. Colvin*, No., 3:15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. March 31, 2016) (Fitzwater, J). The ALJ cites to no opinion by a treating or examining medical source that makes any mention of the effect of Plaintiff's severe impairments on his ability to work. Even the state agency consulting physicians, while opining that Plaintiff's impairments would last less than 12 months from onset, made no RFC findings on which the ALJ could have relied. *See* Doc. 13-1 at 20-21. In sum, the ALJ improperly made an RFC finding with no supporting medical opinion that purports to address the effects of Plaintiff's severe impairments on his ability to perform work-related tasks.

To avoid this problem, an ALJ generally should request a medical source statement describing the types of work that a claimant is still able to perform. *Ripley*, 67 F.3d 552, 557;

*see also* SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) (noting that a "medical source statement" is an opinion about what a claimant can still do despite their impairments, which is submitted by the claimant's "treating source or other acceptable medical sources."). Nevertheless, reversal and remand is only warranted if the ALJ's decision is not supported by substantial evidence in the existing record. *Ripley*, 67 F.3d at 557 (citation omitted). Stated differently, remand is required only where there is a "realistic possibility" that the ALJ would have reached a different conclusion absent the error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam); *Raper*, 262 F.Supp.3d at 422.

That burden is satisfied here. Had the ALJ requested a medical source statement from a treating, examining, or other acceptable medical source about the types of tasks Plaintiff can perform despite his impairments, there is at least a possibility that the ALJ would have decided the case differently. *See Thornhill v. Colvin*, No. 14-CV-335-M, 2015 WL 232844, at *11 (N.D. Tex. Jan. 16, 2015) (Lynn, J.) (finding prejudice "where the ALJ could have obtained evidence that might have changed the result – specifically, a medical source statement"). Accordingly, this case should be reversed and remanded for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 18, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 19, be

7

**DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings.

**SO RECOMMENDED** on September 5, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).